UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITE HERE RETIREMENT FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SAN JOSE, et al., <br><br> Defendants. | Case No. 5:20-cv-06069-EJD <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Re: Dkt. No. 46 |

Before the Court is Defendant Dolce International/San Jose, LLC's ("Dolce") motion to dismiss certain claims brought by Plaintiffs Unite Here Retirement Fund and Trustees of the Unite Here Retirement Fund (collectively, the "Fund") and by Co-Defendant City of San Jose (the "City") pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. to Dismiss, Dkt. No. 46 ("Motion"). The Court heard oral argument on January 21, 2021. For the reasons below, the Court **DENIES** Dolce's Motion.

I.   **Background**

The City owned a hotel and conference center known as the Dolce Hayes Mansion ("Hayes Mansion") from 2003 to 2019, when the City ultimately sold Hayes Mansion to a party unrelated to the dispute at hand.[1] First Am. Compl. ("FAC") ¶¶ 9, 13, Dkt. No. 18. In 2003, when the City came into possession of Hayes Mansion, the City and Dolce entered into a management agreement by which Dolce would operate and manage the City's Hayes Mansion as a hotel and conference center. FAC ¶ 10. Dolce did indeed manage and operate Hayes Mansion throughout the duration

---

[1] This statement and all those contained within the "Background" section summarize allegations made by one or more of the parties.

Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS

1

of the City's ownership of Hayes Mansion. *Id.*

From at least 2010, various Hayes Mansion employees were represented by UNITE HERE Local 19 (and/or its predecessor union) in entering into a series of collective bargaining agreements with Hayes Mansion. *Id.* ¶ 11. These collective bargaining agreements mandated contributions to the Fund and its predecessor fund, the National Retirement Fund, on behalf of the employees represented by UNITE HERE Local 19. *Id.* ¶ 12. The Fund is a multiemployer trust fund that established and maintains a plan known as the "Legacy Plan" to provide retirement income to employees for whom contributions are made by employers. *Id.* ¶ 4.

The obligation by an employer, either the City or Dolce, to make contributions to the Fund was terminated as a result of the City's sale of Hayes Mansion in 2019. *Id.* ¶ 13. Nonetheless, the Fund maintains that either Dolce or the City, as the entity required to contribute to the Fund, is an "employer" for the purposes of incurring a withdrawal liability under the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, ("ERISA") due to withdrawing from the Fund. *Id.* ¶¶ 16, 29. The Fund assessed a withdrawal liability in the principal amount of $1,136,944.00 payable in eighty quarterly installments of $21,744.50. FAC ¶¶ 18–20, 31, Ex. A, Dkt. No. 18-1. In June 2019, the Fund decided to notify the City and Dolce of the withdrawal liability amount, provided a schedule for withdrawal liability payments, and demanded payment in accordance with the schedule ("Notice and Demand"), as required by ERISA. *Id.* ¶¶ 17, 19, 31.

The City and Dolce claim that the other is responsible for the withdrawal liability payments and have taken different approaches with the Fund in regard to contesting the disputed contributions. *Id.* ¶ 14. In January 2020, Dolce timely exercised its right under ERISA to request a review of the Notice and Demand with the Fund. *Id.* ¶ 32. In that request for review, Dolce denied any obligation to contribute to the Fund and asserted that such an obligation was instead held by the City. *Id.* ¶ 34. In any event, beginning in December 2019, Dolce proceeded to make the demanded quarterly withdrawal liability payments to the Fund in accordance with ERISA's "pay now, dispute later" provisions. Motion, p. 1. In December 2020, Dolce timely exercised its right

Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS
2

under ERISA to demand arbitration of its dispute with the Fund. FAC ¶ 33; Pls.' Mot. to Stay Processing of the Demand for Arb. by Def., Dkt. No. 60, p. 4. In contrast, the City did not request review of the withdrawal liability nor did it submit the first quarterly payment demanded by the Fund. FAC ¶¶ 21–22; Pls.' Resp. to Motion, Dkt. No. 47, p. 3.

On April 28, 2020, the Fund originally brought this lawsuit against the City in the United States District Court for the Southern District of New York, where the Fund's plan was administered, to collect the entire outstanding withdrawal liability. *UNITE HERE Retirement Fund, et al. v. City of San Jose*, Civ. No. 20-cv-3319 (S.D.N.Y. 2020), Dkt. No. 1 (original complaint). After the lawsuit was transferred to this Court due to a related case here,[2] the Fund amended its original complaint to include Dolce as an additional defendant, seeking the Court to adjudicate whether the City or Dolce is the "employer" for the purposes of imposing the ERISA-mandated withdrawal liability pursuant to Sections 4201 through 4225 and 4301 of ERISA, 29 U.S.C. § 1381–1405, 1451. FAC ¶¶ 1, 36.

Dolce filed the present Motion, seeking to dismiss claims by the City and the Fund. At the time of the filing of Dolce's Motion, the City had a cross-claim against Dolce alleging that Dolce, not the City, is the "employer" within the meaning of Section 4212(a) of ERISA. Def. City's Answer to FAC and Cross-cl., Dkt. No. 23, p. 5. The City later filed an amended answer which no longer includes the cross-claim against Dolce. Def. City's First Am. Answer to FAC, Dkt. No. 48. For that reason, the Court deems Dolce's Motion moot as to the City.

As to the Fund, Dolce argues that pursuant to ERISA's mandatory arbitration provisions, the determination of who is an "employer" under ERISA must be arbitrated rather than adjudicated by this Court. Motion, p. 2. While the Fund agrees that certain withdrawal liability disputes under ERISA are subject to arbitration, the Fund opposes the Motion, arguing that the determination of who is an "employer" under ERISA is a threshold jurisdictional question that is

---

[2] Dolce is separately suing the City based on a series of claims stemming from their management agreement for Hayes Mansion in a related lawsuit before this Court. *Dolce International/San Jose, LLC v. City of San Jose*, Case No. 5:20-cv-03774-EJD.

Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS

3

proper for this Court to decide before a party is required to arbitrate. Pls.' Resp. to Motion, Dkt. No. 47, p. 5, 9.

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that a claim "is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. 1955.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1998). Furthermore, "material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios*, 896 F.2d at 1555 n.19. However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

## III.   Discussion

In its Motion, Dolce argues that the Fund's claim should be dismissed because they are subject to arbitration first. Motion, p. 2. More specifically, Dolce contends that an arbitrator, and not the court, must decide whether Dolce is the "employer" of the bargaining unit employees at Hayes Mansion and thus, subject to a withdrawal liability. *Id.* In support of this assertion, Dolce

Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS
4

1    points to Section 4221 of ERISA, and specifically the "MPPAA," which states in part that "[a]ny
2    dispute between an employer and the plan sponsor of a multiemployer plan concerning a
3    determination made under sections 1381 through 1399 of this title shall be resolved through
4    arbitration." 29 U.S.C. § 1401(a); *see also Bd. of Trustees of Const. Laborers' Pension Tr. for S.*
5    *California v. M.M. Sundt Const. Co.*, 37 F.3d 1419, 1420 (9th Cir. 1994) ("*M.M. Sundt*") ("Under
6    ERISA, disputes which arise under 29 U.S.C. §§ 1381–99 are to be resolved through
7    arbitration.").[3] This statutory requirement to arbitrate extends to "[i]ssues concerning whether an
8    employer has withdrawn from a plan and, if so, the amount of withdrawal liability are committed
9    to arbitration." *Irigaray Dairy v. Dairy Employees Union Local No. 17 Christian Labor Ass'n of*
10   *the United States of Am. Pension Tr.,* 153 F. Supp. 3d 1217, 1257 (E.D. Cal. 2015).

11            The Ninth Circuit has not directly addressed whether the statutory requirement to arbitrate
12   extends to the specific issue raised here—namely, whether a defendant is an "employer" under the
13   MPPAA. *See generally Irigaray Dairy* 153 F. Supp. 3d at 1257. Several other circuit courts,
14   however, "have held that whether a defendant is an employer under the MPPAA is subject to
15   judicial review, not arbitration." *Irigaray Dairy* 153 F. Supp. 3d at 1257–58 (citing *N.Y. State*
16   *Teamsters Conf. Pension & Ret. Fund v. Express Servs. Inc.*, 426 F.3d 640, 645 (2d Cir. 2005)
17   ("*Express Servs.*"); *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 142 (3d Cir. 1997); *Rheem*
18   *Mfg. Co. v. Cent. States Se. & Sw. Areas Pension Fund*, 63 F.3d 703, 706 (8th Cir. 1995);
19   *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 122 (4th Cir. 1991); *Carriers*
20   *Container Council, Inc. v. Mobile S.S. Ass'n Inc.–Intern. Longshoreman's Ass'n, AFL–CIO*
21   *Pension Plan & Trust*, 896 F.2d 1330, 1345 (11th Cir. 1990)). In other words, "employer status is
22   a 'threshold legal issue' requiring 'judicial resolution,' since an entity that is not an employer

---

[3] "Arbitration is the initial stage of the dispute resolution process established by statute, with judicial consideration to follow, 'to enforce, vacate or modify the arbitrator's award.'" *Irigaray Dairy*, 153 F. Supp. 3d at 1257 (quoting *Teamsters Pension Trust Fund-Bd. of Trustees of W. Conference v. Allyn Trans. Co.*, 832 F.2d 502, 504 (9th Cir. 1987)). Thus, ERISA's "arbitration clause constitutes an exhaustion of administrative remedies requirement." *M.M. Sundt*, 37 F.3d at 1420. The arbitration clause "is not a jurisdictional prerequisite to federal court review" and further, "district courts maintain subject matter jurisdiction for all disputes arising under ERISA pursuant to 29 U.S.C. § 1451(c)." *Id.*

Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS
5

United States District Court
Northern District of California

cannot, under the MPPAA, be required to arbitrate." *Express Servs.,* 426 F.3d at 645 (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 261 (2d Cir. 1990); *Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 852 F.2d 156, 167 (6th Cir. 1988)).

A number of district courts within the Ninth Circuit have also consistently held that questions of employer-status, particularly for purposes of withdrawal liability, are proper for judicial review. *See Irigaray Dairy*, 153 F. Supp. 3d at 1257–58; *Marine Carpenters Pension Fund v. Puglia Marine, LLC*, 382 F. Supp. 3d 1134, 1142 (W.D. Wash. 2019); *Resilient Floor Covering Pension Fund v. Floor Covering Contracts*, 2020 WL 7056001, at *2 (N.D. Cal. Dec. 2, 2020); *Bd. of Trustees of Butcher & Provision Workers Pension Fund of S. California v. Specialty Meats, Inc.*, 2013 WL 12116381, at *5 (C.D. Cal. Sept. 30, 2013).

There exists a narrow exception to the general notion that a determination of a party's status as an employer is appropriate for judicial review rather than arbitration. *See Irigaray Dairy*, 153 F. Supp. 3d at 1258; *Galgay*, 105 F.3d at 141; *Centra*, 947 F.2d at 122. That exception exists when an entity claims that it once was an employer but now claims it has since ceased to be an employer. *Id.* Such disputes are subject to arbitration. *Id.*

Dolce cites to *M.M. Sundt* as its primary support for its assertion that "a failure to undergo the arbitration process prescribed in §4221(a) *could* indeed support dismissal under Rule 12(b)(6)." Motion, p. 12 (emphasis added). Although Dolce is indeed correct that a failure to undergo ERISA's mandatory arbitration process can result in dismissal under Rule 12(b)(6), it does not follow that the Fund's claim is subject to dismissal in this case. The court in *M.M. Sundt* dismissed the plaintiff's claim for failure to exhaust arbitration, however, for entirely different reasons than are present here. *See M.M. Sundt,* 37 F.3d at 1420. In the midst of ongoing arbitration regarding the amount of withdrawal liability, the plaintiff pension fund in *M.M. Sundt* brought suit against a defendant construction company, seeking discovery of certain information that was denied by the arbitrator. *See id*. The plaintiff's lawsuit in *M.M. Sundt* was properly dismissed under Rule 12(b)(6) due to the plaintiff's failure to complete the arbitration process. *See id.* at

Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS
6

1421. Critically, the employer-status of the defendant construction company was clear and not in dispute by either party. *See id.* In contrast, Dolce's contested status as an employer is at the heart of this dispute, distinguishing this case from the settled employer-status of the parties in *M.M. Sundt*. *See* Motion, p. 2. *But see M.M. Sundt,* 37 F.3d at 1421. Further, the instant suit does not arise from a dispute that originated during ongoing arbitration. In contrast, this suit is attempting to settle the preliminary question of whether mandating a party to undergo arbitration is even appropriate when the employer-status of another party is in dispute. Motion, p. 1–2. The court in *Irigaray Dairy* answers this question in the negative. *See Irigaray Dairy*, 153 F. Supp. 3d at 1257–58.

Dolce presents a novel argument in its Reply that seemingly seeks to have Dolce shoehorn itself into the narrow exception described in *Irigaray Dairy* by simultaneously taking advantage of two competing applications of employer-status. Def. Dolce's Reply to Pls.' Resp. to Motion, Dkt. No. 49, p. 2–3, 10; *see also Irigaray Dairy,* 153 F. Supp. 3d at 1258. As described above, that exception states that "disputes as to whether an entity has ceased to be an employer, rather than whether the entity was ever an employer, are subject to arbitration." *Irigaray Dairy,* 153 F. Supp. 3d at 1258 1258 (citing *Galgay*, 105 F.3d at 141; *Centra*, 947 F.2d at 122). Dolce claims that, by virtue of its membership in a controlled group that contributes to the Fund due to the controlled group's management of other unrelated properties,[4] Dolce is indeed an employer for the purposes of proceeding to arbitration. Def. Dolce's Reply to Pls.' Resp. to Motion, Dkt. No. 49, p. 10. Dolce goes on to further claim that it is not, and never was, an employer specifically in regard to the employees at Hayes Mansion and thus, it is not the employer for the imposition of the withdrawal liability in question. *Id.* Dolce's reliance on the narrow exception articulated above is misguided. Dolce is not asserting that it once was an employer and has since ceased to be an

---

[4] In Dolce's Reply to Plaintiffs' Response to Dolce's Motion to Dismiss, Dolce asserts that it became an affiliate of Wyndham Hotel Group LLC in 2015 and thus became part of a "controlled group" for the purposes of ERISA. Def. Dolce's Reply to Pls.' Resp. to Motion, Dkt. No. 49, p. 2–3. ERISA's "controlled group" provisions state in part that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b).

Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS
7

employer of the bargaining unit employees at Hayes Mansion—an issue that would be appropriate for arbitration. *See Irigaray Dairy,* 153 F. Supp. 3d at 1258. Rather, Dolce claims that it was never the employer of the employees working at the Hayes Mansion and never held an obligation to contribute to the Fund whatsoever regarding the bargaining unit employees at Hayes Mansion. Def. Dolce's Reply to Pls.' Resp. to Motion, Dkt. No. 49, p. 10. As outlined above, this issue is subject to judicial review. *See Irigaray Dairy,* 153 F. Supp. 3d at 1258. Additionally, as the Fund points out in its Surreply, "Dolce has not presented a single case on point to support its assertion that an entity which is a member of a controlled group which includes other 'employers' of the party fund . . . must have its status as the 'employer' in the instant matter evaluated by an arbitrator rather than by the court." Pls.' Surreply to Motion, Dkt. No. 52, p. 7.

Instead, Dolce cites to *Flying Tiger Line v. Teamsters Pension Tr. Fund of Philadelphia* to support its argument that "disputes between a company that already qualifies as an 'employer,'" such as Dolce due to its alleged membership in a controlled group, "and a multiemployer plan must first be arbitrated." Def. Dolce's Reply to Pls.' Resp. to Motion, Dkt. No. 49, p. 7, 10 (citing *Flying Tiger Line v. Teamsters Pension Tr. Fund of Philadelphia*, 830 F.2d 1241, 1248–51 (3d Cir. 1987) ("*Flying Tiger Line*")). In *Flying Tiger Line*, a holding company of a subsidiary was accused by a pension fund of avoiding the imposition of a withdrawal liability through the sale of the subsidiary's stock. *See Flying Tiger Line*, 830 F.2d at 1244–47. The *Flying Tiger Line* court held that the parties must arbitrate their dispute as to whether the principal purpose of the holding company's sale of the subsidiary's stock was to evade or avoid withdrawal liability. *See id.* at 1250. Further, the court explicitly noted that its decision that arbitration was appropriate hinged on the fact that the dispute arose under ERISA's "evade or avoid" provisions, subject to mandatory arbitration, and that the dispute was "not simply a matter of whether [the holding company] was an 'employer' as defined by the statute at the time of [the subsidiary's] withdrawal." *See id.* Notably, the court did not base its decision on a party's relationship to a controlled group or any such holding company. *See id.*

Dolce further contends that case law consistently supports a purported "general rule"

Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS

8

1    where "an employer must first arbitrate, even when one of the issues is whether it qualified as an

2    'employer' at a particular location or facility." Def. Dolce's Reply to Pls.' Resp. to Motion, Dkt.

3    No. 49, p. 10. Dolce does not attempt to substantively address the holding in *Irigaray Dairy*,

4    which stands in clear conflict with the so-called "general rule" that Dolce seeks this Court to

5    apply. *See Irigaray Dairy*, 153 F. Supp. 3d at 1257–58. Instead, Dolce cites to *H.C. Elliott, Inc. v.

6    Carpenters Pension Tr. Fund for N. Cal.* as support for its assertion that employers must first

7    arbitrate, including the issue of employer-status. Def. Dolce's Reply to Pls.' Resp. to Motion, Dkt.

8    No. 49, p. 10 (citing *H.C. Elliott, Inc. v. Carpenters Pension Tr. Fund for N. California*, 859 F.2d

9    808 (9th Cir. 1988) ("*H.C. Elliott*")). Nonetheless, the holding in *H.C. Elliott* does not support

10   Dolce's contention. *See H.C. Elliott*, 859 F.2d at 809. The parties in *H.C. Elliott* were sent to

11   arbitration by the court; however, the parties were ordered "to proceed to arbitration as to the

12   amount of the liability" and not for a determination of employer-status. *H.C. Elliott*, 859 F.2d at

13   809.

14          Dolce's reliance on *Resilient Floor Covering Pension Fund v. M&M Installation, Inc.* is

15   also unavailing. *See generally Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*,

16   630 F.3d 848 (9th Cir. 2010) ("*M&M Installation*"). That case was primarily concerned with

17   applying the correct alter ego test to determine whether a contractor was liable for the withdrawal

18   liability incurred by one of its subcontractors. *See M&M Installation, Inc.*, 630 F.3d at 849. As the

19   issue of an alter ego implies, there was a question as to who was the employer for purposes of

20   withdrawal liability but, importantly, there was no mandate that the parties in *M&M Installation*

21   must go to arbitration first. *Id.* In actuality, the parties were remanded to district court for the

22   proper application of an alter ego test. *Id.*

23          In *Express Servs.*, which Dolce additionally cites for support, a pension fund pursued a

24   handful of companies it accused of being alter egos of a bankrupt employer responsible for a

25   withdrawal liability. *See Express Servs.*, 426 F.3d at 643. The court in *Express Servs.* made the

26   clear "distinction between determinations of employer status per se, which are for the court, and

27   determinations of continued employer status, which are for the arbitrator." *See Express Servs.*, 426

28   Case No. 5:20-cv-06069-EJD
ORDER DENYING MOTION TO DISMISS
9

United States District Court
Northern District of California

1  F.3d at 646. Because the accused companies "never conceded that they were previously employers

2  under [ERISA]," the court held it is appropriate for the court, and not an arbitrator, to settle their

3  employer-status. *See id.* at 647. Notably, the court did not base its holding on an analysis of an

4  entity's relationship in a controlled group that contributes to the fund. *Id.* Even setting the issue of

5  employer-status aside, the court further held that arbitration would still "be inappropriate in this

6  case because the parties' dispute does not fall under any of the provisions enumerated in §

7  1401(a)." *Express Servs.*, 426 F.3d at 647 (citing 29 U.S.C. § 1401(a) "imposing arbitration

8  requirement only for disputes between employers and funds under sections 1381 through 1399").

9  In contrast, Dolce seemingly both concedes and disputes its status as an employer. As it

10  cryptically characterizes itself as "no stranger to the Fund," Dolce claims that it "is an existing

11  employer, with an established relationship to the Fund" and thus should be subject to arbitration.

12  Def. Dolce's Reply to Pls.' Resp. to Motion, Dkt. No. 49, p. 2, 10. At the same time, Dolce

13  "contends that it was not, and never was, an 'employer' of the bargaining unit employees who

14  worked at the Hayes Mansion," a position that would clearly dictate judicial review according the

15  very cases that Dolce cites for support, including and especially the holding in *Express Servs*. Def.

16  Dolce's Reply to Pls.' Resp. to Motion, Dkt. No. 49, p. 10; *see Express Servs.*, 426 F.3d at 646.

17  This Court sees no reason to depart from the holding in *Irigaray Dairy* and from the

18  numerous circuit and district courts that support the proposition that, under ERISA, a party's

19  status as an employer, including for the purposes of withdrawal liability, is appropriate for judicial

20  review, not arbitration.

21  **IV.   Conclusion**

22  For the reasons stated above, Dolce's motion to dismiss is **DENIED**.

23  **IT IS SO ORDERED.**

24  Dated: January 28, 2021

25

26  EDWARD J. DAVILA
    United States District Judge

27

28  Case No. 5:20-cv-06069-EJD
    ORDER DENYING MOTION TO DISMISS
                                        10